**Musi, Merkins, Daubenberger & Clark, LLP**
21 West Third Street
Media, PA 19063
T (610) 891-8806
F (610) 891-8807
dlk@mmdlawfirm.com
Dimitri L. Karapelou, Esquire

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE:** <br><br> **Paul Giordano & Sons, Inc.** <br><br><br> **Debtor** | **Chapter 7** <br><br> **Bankruptcy No.: 24-13268** |

**MOTION OF REGIONAL PRODUCE COOPERATIVE CORPORATION SEEKING AN ORDER AUTHORIZING THE CHAPTER 7 TRUSTEE TO ABANDON CERTAIN ASSETS PURSUANT TO 11 U.S.C § 554 (b)**

Regional Produce Cooperative Corporation ("RPCC"), a creditor in the above-captioned bankruptcy case of Paul Giordano & Sons, Inc., by and through its undersigned counsel, hereby seeks an order authorizing the Trustee to abandon certain assets pursuant to 11 U.S.C. § 554(b). This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  In support of the Motion, RPCC states as follows:

**FACTUAL BACKGROUND**

1. Lynn E. Feldman is the duly appointed and acting Chapter 7 Trustee in this case ("Trustee").

2. The Debtor filed the instant case for relief under provisions of Chapter 7 of the United States Bankruptcy Code on September 15, 2024. A meeting of creditors was held and concluded on October 16, 2024. The Trustee has declared this bankruptcy an Asset Case.

4. RPCC is a produce cooperative that operates and manages a market at 6700 Essington Avenue Philadelphia, PA 19153 ("Market").

5. RPCC is comprised of a group of shareholders who rent "units" at the market and who "engage in the sale of fruit, vegetables, horticultural products, or a combination of such products." *See* RPCC Bylaws at §§ 2.2; 5.3-5.4. A true and correct copy of RPCC's Bylaws are attached hereto as Exhibit A.

6. RPCC leases the property pursuant to a sublease agreement with Essington Avenue Partners L.P. ("EAP").

7. On September 16, 2008, Debtor executed a Store Lease for Philadelphia Fresh Food Terminal (the "Lease") in favor of RPCC.

8. Debtor leased 3 Units—Units D-7, D-8, and D-9—out of 68 leased units.

8. On December 19, 2016, RPCC issued shares of stock to Debtor as evidenced by three (3) separate certificates of stock for 20 shares each, each block of 20 shares relating to one unit leased (the "Shares"). A true and correct copy of the Shares are attached hereto, incorporated herein and marked as Exhibit B.

9. On or about September 16, 2008, Debtor executed a Transfer Restriction Agreement containing, among other conditions, express restrictions against the use, sale and transferability Shares. A true and correct copy of the Transfer Restriction Agreement is attached hereto as Exhibit C. Pursuant to Section 5.9 of RPCC's Bylaws and RPCC's possession of the

original stock certificates representing the Shares, RPCC has a perfected security interest in the Shares.

10. In August 2017, Debtor executed a First Amendment to Store Lease ("First Amended Lease").

11. Pursuant to the Lease, Debtor agreed to pay RPCC Rent in equal monthly installments.

12. Pursuant to the Lease, the Debtor's Rent is equal to Debtor's Pro Rata Share of the Annual Base Rent that RPCC owes to EAP.

13. The Annual Base Rent that RPCC owes to EAP is set out in the "Total Rent" column in the First Amended Lease.

14. Pursuant to the Lease, Debtor's Pro Rata Share is equal to the number of Store Units leased by Debtor over the number of Store Units leased by all shareholders of RPCC.

15. Debtor leased 3 Units—Units D-7, D-8, and D-9—out of 68 leased units.

16. As such, Debtor's Pro Rata Share is 3/68 (or .04411765) multiplied by the RPPC's Annual Base Rent set out in the Total Rent column in the First Amended Lease.

17. Debtor stopped paying rent to RPCC in July 2023.

18. On October 13, 2023, RPCC delivered to Debtor a default notice letter under the Lease ("Notice of Default").

19. Debtor did not respond to the default notice letter.

20. On October 31, 2023, RPCC delivered to Debtor notice that it would exercise its remedies under the Lease and related documents ("Exercise of Remedies") including termination of Lease. A true and correct copy of the Exercise of Remedies is attached hereto, incorporated herein and marked as Exhibit D.

21. On Nov 3, 2023, Debtor turned over keys to the Leased premises informing RPCC that the company is no longer operating. Debtor abandoned Units D-7 through D-9 and stopped making Rent payments, each of which constitutes an Event of Default under the Lease. Pursuant to the Lease, upon the occurrence of an Event of Default RPCC can accelerate Rent. RPCC accelerated the Lease.

22. On Nov 15, 2023, RPCC delivered to Debtor a demand for return of Shares ("Demand for Shares") in accordance with the By-Laws. A true and correct copy of the Exercise of Remedies is attached hereto, incorporated herein and marked as Exhibit E.

23. The Lease was fully terminated before this chapter 7 case was commenced by the Debtor. The Lease is not listed as an asset in the bankruptcy schedules or in Schedule G.

24. Despite having closed its business and losing all rights in the Lease, the Debtor's Schedule B, Line 15 lists ownership of thirty (30) Shares in RPCC having a stated value of $300,000. This disclosure is inaccurate. The Shares have no value to this Estate, as explained below.

25. Per the Transfer Restriction Agreement, the chapter 7 filing resulted in a change in control. A change in control does not effectuate an approved transfer of the shares from Debtor to the chapter 7 trustee.

> Shareholder may not sell, exchange, transfer, hypothecate, negotiate, gift, convey in trust, pledge, assign, encumber, or otherwise dispose of all or a portion of the Common Stock (irrespective of whether any of the foregoing are effected with or without consideration, voluntarily or involuntarily, by operation of law or otherwise, or whether inter vivos or upon death) (a "Transfer") to any Person except as provided herein and in the Bylaws. For purposes hereof, the term "Transfer" shall include a "Change in Control", which means the consummation of (a) a reorganization, merger, consolidation or recapitalization of a Shareholder (a "Business Combination"), other than a Business Combination in which more than fifty percent (50%) of the combined voting power of the outstanding voting securities of the surviving or resulting entity immediately following the Business Combination is held by the persons who, immediately prior to the Business Combination, were the holders of the voting

securities of the Shareholder; (b) a complete liquidation or dissolution of the Shareholder; (c) a sale of all or substantially all of the Shareholder's assets that includes all or a portion of the Common Stock; (d) any transaction or series of related transactions that result in the issuance of capital stock by the Shareholder, or the right to purchase capital stock by the Shareholder, such that immediately after the issuance of such capital stock, the holders thereof would own an amount greater than fifty percent (50%) of the issued and outstanding capital stock on a fully diluted basis, or (e) any transaction or series of related transactions in which the current holders of the voting securities of the Shareholder sell or exchange more than fifty percent (50%) of the voting securities of the Shareholder then held by such persons…….Any Transfer not expressly permitted under the terms of this Agreement or the Bylaws shall be void and of no effect.  See Transfer Restriction Agreement, Exhibit C, Section 1.

26. The By-Laws provide that the Debtor must be bound by an active lease agreement in order to own stock. Further, the By-Laws provide that should the Debtor stop operating, RPCC may demand the Debtor to return the stock at a price equal to the Repurchase Price, which here is $0.00 because RPCC's book value is negative as determined by its 2023 year-end financial statements.

**Section 5.6.**   **Obligation to Lease Units; Maximum Number of Shares/Units.**

Every Shareholder in the Corporation must own a minimum of twenty (20) Shares of Stock in the Corporation at all times and enter into and at all times be bound by a lease agreement with the Corporation for one (1) Unit at the Market for every 20 Shares owned in which the Shareholder actively engages in the sale of fruit, vegetables, or horticultural products, or a combination thereof, in accordance with Section 5.3, in those Units. Shareholders may own more than 20 Shares and concomitantly lease multiple Units at the Market; provided that no Shareholder in the Corporation may own or hold, directly or indirectly through an Affiliate, more than 180 shares in the Corporation. Notwithstanding the above, the Board may in its discretion rent unoccupied Units or parts thereof to non-Shareholders or to Shareholders who do not own sufficient Shares to rent an additional Unit in order to defray the cost to the Shareholders of maintaining those unoccupied Units so long as the use of such rented Units is consistent with the purposes and function of the Market.

**Section 5.12.  Cessation of Activities.**

The Board shall, from time to time, evaluate the activities of the Shareholders at the Market. If the Board determines, in its sole discretion, that a Shareholder (i) is no longer actively engaged in the fruit, vegetable or horticultural products industry or a combination of such industries, or dealing in products included in such industries as determined by the Board in accordance with Section 5.3, (ii) ceases to lease at least one (1) Unit at the Market; (iii) owns less than twenty (20) shares. of Common Stock per Unit leased by such Shareholder

at the Market; or (iv) breaches the Transfer Restriction Agreement, the Board may require the Shareholder to promptly transfer its shares of Common Stock to the Corporation at a price equal to the Repurchase Price (as defined in the Transfer Restriction Agreement).

See By-Laws, Exhibit A.

## GROUNDS FOR RELIEF REQUESTED

27. An "estate" was created when each debtor filed a chapter 7 petition. *See* 11 U.S.C. § 541. Included therein are "all legal or equitable interests of the debtor in property as of the commencement of the case". 11 U.S.C. § 541(a)(1). *In re Lansberry*, 177 B.R. 49 (Bankr. W.D. Pa., 1995)

28. The Estate in this case listed the Shares as an asset on Debtor's Schedule B.

29. The Bankruptcy Code addresses the matter of abandonment as follows:

    (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
    (b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
    (c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.
    (d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.
*See* 11 U.S.C. § 554. *In re Lansberry*, 177 B.R. 49 (Bankr. W.D. Pa., 1995)

30. A trustee may consider abandonment of property when it has inconsequential value to the estate and is otherwise burdensome. In this case, the trustee has not yet abandoned any asset.

31. On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate. 11 U.S.C. § 554 (b).

32. Estate property may not be "administratively abandoned" — i.e., abandoned

without judicial involvement and order of court.

33. Property abandoned pursuant to § 554(a) or (b) ceases to be part of the bankruptcy estate and reverts to the debtor as if no bankruptcy had ever been filed. *See In re Dewsnup*, 908 F.2d 588 (10th Cir.1990), cert. denied, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

34. The trustee has the power to use discretion when deciding which property to abandon by way of formal motion procedure. *See In re Slack*, 290 B.R. 282 (Bankr. N.J., 2003). Here the Trustee has not filed any such motion. Consequently, RPCC files this Motion pursuant to 11 U.S.C. § 554 (b).

35. In this bankruptcy case, the Shares have no value to the Estate because the Lease was terminated prior to the bankruptcy and the business closed. RPCC is within its rights to demand a return of the Shares so they can be liquidated pursuant to the By-Laws. Indeed, RPCC, prior to this bankruptcy demanded a return of the Shares. Debtor simply refused to cooperate.

36. Instead, Debtor filed this chapter 7 case in a last-ditch effort to block RPCC from fully exercising its rights and completing a liquidation of the Shares. The Court should see through this ruse. The Trustee could not under any imaginable scenario sell, transfer or otherwise dispose of these Shares that would result in any benefit to the Estate. If anything, RPCC would object to any such efforts by this Trustee. The bankruptcy estate of the Debtor has no right to possess, sell, transfer, lien or otherwise dispose of the Shares.

37. RPCC seeks an order to abandon the Shares so that it can reclaim the Shares and sell them by auction pursuant to the internal requirements of the By-Laws and other related governance documents.

38. The Court should grant the Motion because RPCC has a perfected security interest in the Shares and Debtor has no remaining rights in the Shares to create any value for this Estate.

The Debtor's real property lease for three units at the Market was fully terminated in November of 2023, ten months prior to Debtor's bankruptcy filing. Having a lease for at least one unit at the Market is among the requirements for ownership of stock in RPCC; absent a valid lease, Debtor cannot be a stockholder of the cooperative and therefore has no rights to the RPCC stock. Moreover, because ownership of stock is tied to a lease, the Trustee cannot sell the Shares issued to Debtor to a third party.

39. Thus, the Court by compelling the Trustee to abandon this asset, is alleviating the Estate of a burdensome obligation and an asset that has no use or value in this bankruptcy. Abandonment is appropriate where no unsecured creditor would benefit from the administration of asset in question. *See In re Paolella* 79 B.R. 607 (Bankr. E.D.Pa. 1987) (granting motion filed under § 554(b). As of the Petition Date, the Debtor owes RPCC $161,097.06 in rent plus other charges which are secured by the Shares; any sale of the Shares would not be possible and even if a sale could be effectuated, RPCC would be the purchaser for $0.00 and would net out its secured claim against the sale price, resulting in no recovery for unsecured creditors. The realization to the Estate would be less than $0.00 as the Estate would have incurred unnecessary administrative costs in attempting such futile sale potentially diminishing distributions to unsecured creditors available from other Estate assets.

WHEREFORE, Regional Produce Cooperative Corporation hereby requests that the Court issue an order compelling the Chapter 7 Trustee to abandon the Shares pursuant to 11 U.S.C. Section 554 (b).

Date: December 19, 2024             /s/ Dimitri L. Karapelou
                                    Dimitri L. Karapelou, Esquire
                                    Musi, Merkins, Daubenberger & Clark, LLP
                                    21 W Third Street
                                    Media, PA19063
                                    DLK@mmdlawfirm.com